UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Eshaq Esso,   Case No. 05-88591
   Chapter 7
          Debtor.   Hon. Marci B. McIvor
_____/

Communicating Arts Credit Union,

          Plaintiff,

v.   Adv. P. No. 06-4589

Eshaq Esso,

          Defendant.
_____/

## OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the motion of plaintiff Communicating Ars Credit Union for summary judgment. Plaintiff seeks to have a $14,953.53 debt owed to it by debtor-defendant Eshaq Esso held non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).[1] For the reasons stated in this memo, Plaintiff's Motion is denied.

### Background

Debtor-defendant Eshaq Esso applied for and received two loans from plaintiff-creditor Communicating Arts Credit Union ("CACU"). The first loan was made on April 2, 2004 in the amount of $16,972.02 with monthly payments of $493.79. The loan was

---

[1] Plaintiff's Complaint has four counts: Count I Fraudulent Misrepresentation-Obtaining Funds under False Pretenses (§ 523(A)(2)(a)); Count II Breach of Contract; Count III Fraudulent Misrepresentation as to Motor Vehicle; and Count IV Willful and Malicious Damage of Property (§ 523(a)(6)).

secured by a 2001 Chrysler 300M. The loan was presumably made to purchase the vehicle (although that purpose is not specified on the face of the application). The second loan was made on March 21, 2005 in the amount of $7,744 with monthly payments of $379.77.[2] The loan was unsecured and the parties agree that the purpose of the loan was a vacation.[3]

According to Plaintiff, Defendant did not use the unsecured loan to fund a vacation. Rather, he used it for gambling. (Plaintiff's brief at 6, referring to admissions made by Defendant at the first meeting of creditors and the creditor's exam). Debtor asserts that he used at least a portion of the proceeds to fund a trip in the fall of 2005. (Debtor's Interrogatory Response 5). In his written Admissions, Debtor denies having used any of the money for gambling. (Debtor's Admissions ¶ 5). In his affidavit, Debtor states that he intended to use the money for a vacation, "but that mismanagement on my part lost the money gambling." (Affidavit ¶ 3).

With respect to the secured loan, Defendant was allegedly involved in a single car accident on southbound I-75 on July 8, 2005. The car, which secured Plaintiff's

---

[2]There is some confusion regarding the original amount of the loan. In the Complaint, Plaintiff asserts that the loan amount was $5,771.75. That amount does not match the face of the note, which is $7,744.00. Plaintiff's Motion for Summary Judgment alleges that the loan was for $7,744 but Defendant's admissions indicate that the loan amount was $5,771.75. (Defendant's Admissions ¶ 2). Defendant contends that the loan was a revolving line of credit. (Defendant's Admissions ¶ 8).

[3]The parties refer to the loan application in citing the loan's purpose. Neither the note nor the application state the purpose of the loan. Debtor admitted under oath at his 341 hearing that he borrowed the money for a vacation. According to Defendant's written admissions, "[c]onsidering it was a revolving credit loan, no one asked me what I was using the money for." (Defendant's Admissions ¶ 8).

2

loan, was declared a total loss by AAA. While AAA initially offered Defendant $11,020.50 for the vehicle, Defendant attempted to negotiate a higher payment ($14,000). Upon further investigation, AAA denied the claim entirely for fraud.[4]

Defendant's version of the accident is set forth in Response 3b to Plaintiff's Interrogatories (essentially, a single car accident which arose when Mr. Esso swerved out of the way of a car which was speeding up behind him). While the exact results of AAA's investigation are not clear, the company was concerned by the fact that the tires (and other parts of the car) were missing at the time the car was inspected by AAA. Defendant's affidavit (attached to his response brief) indicates that the 2001 Chrysler was stolen. (Affidavit ¶ 4).

Defendant filed a voluntary chapter 7 bankruptcy petition on October 15, 2005. Plaintiff seeks to have the two loans held non-dischargeable. Plaintiff claims that the unsecured loan is non-dischargeable pursuant to § 523(a)(2)(A), because Plaintiff obtained the loan through fraud (i.e. he told Plaintiff that the loan was for a vacation when the real purpose for the loan was gambling). Plaintiff claims that the secured loan is non-dischargeable pursuant to § 523(a)(6)(willful and malicious injury to Plaintiff's property). Plaintiff contends that Defendant willfully and maliciously caused the damage to the 2001 Chrysler and then made materially false statements to the insurance company resulting in the denial of the claim.

Defendant asserts that at the time he obtained the unsecured loan, he intended

---

[4]Plaintiff asserts that it was not informed about the car accident until after AAA denied the claim.

to take a vacation with the proceeds. With respect to the secured loan, Debtor contends that he did not take the tires off the car and that Plaintiff has offered no proof to the contrary. Moreover, he did not pursue denial of the claim by AAA because he did not have the means to hire an attorney and he could not find an attorney to take it on contingency.

## Jurisdiction

Bankruptcy courts have jurisdiction over all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11. See 28 U.S.C. §§ 1334 and 157. Core proceedings include proceedings to determine dischargeability. 11 U.S.C. § 157(b)(2)(I).

## Standard For Summary Judgment

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of

4

material fact." Celotex, 477 U.S. 317, 323. A "genuine" issue is one where no reasonable factfinder could return a judgment in favor of the non-moving party. Berryman v. Reiger, 150 F.2d 561, 566 (6th Cir. 1998) (citing Anderson, 447 U.S. at 248). Once the movant meets this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted." Cox v. Kentucky Dept. of Transportation, 53 F.3d 146, 149-50 (6th Cir. 1995) (internal quotation marks and citation omitted).

## Analysis

The general rule of Chapter 7 bankruptcy is that a bankruptcy debtor's preexisting financial obligations are discharged and the debtor begins with a clean financial slate. There are, however, several exceptions to the general rule. Those exceptions include: (1) 11 U.S.C. § 523(a)(2)(A), which excepts from discharge debt obtained by false representation; and (2) 11 U.S.C. § 523(a)(6) which excepts from discharge a debt arising from a willful and malicious injury by the debtor

To avoid the effect of a discharge, the burden is on the creditor to prove that the debt falls within the exception claimed *Hill v. Smith,* 260 U.S. 592 (1923). A creditor must establish a § 523(a) exception by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279 (1991).

### 11 U.S.C. § 523(a)(2)(A): Fraudulent Misrepresentation

Section 523 (a)(2)(A) excepts from discharge any debt "for money, property, [or]

5

services . . . to the extent obtained by false pretenses, a false representation, or actual fraud. . . " To prevail on a claim under this section, a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with **reckless disregard for the truth**; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Rembert*, 141 F.3d 277, 280 (6th Cir. 1998)(emphasis added). *See also Digital Commerce Ltd. v. Sullivan (In re Sullivan)*, 305 B.R. 809, 823 (W.D. Mich. 2004).

The purpose of section 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *In re Omegas Group, Inc.*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence. *Rembert*, 141 F.3d at 281.

While openly false assertions plainly qualify as misrepresentations, "it is well-established that 'material omissions can [also] form the basis of misrepresentation under § 523(a)(2)(A)." *Sullivan*, 305 B.R. at 823, quoting *McHenry v. Ward (In re Ward)*, 115 B.R. 532, 539 (W.D. Mich. 1990). Even where a party fails to prove the standard traditional elements of misrepresentational fraud, courts have broadly construed fraud in the context of § 523 (a)(2)(A).

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by suppression of the truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*Sullivan,* 305 B.R. at 824, *quoting McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir., 2000).

6

Intent, under *In re Rembert*, is measured subjectively. 141 F.3d at 281. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . A 'dumb but honest' [debtor] does not satisfy the test." *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir., 1997)(citations omitted). A debtor's fraudulent intent,

> may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of the circumstances' presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.' The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations.

*Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Co. 2002)(quoting *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000)(citations omitted). "A creditor can present proof of surrounding circumstances from which a [c]ourt can infer a dishonest intent." *Commercial Bank and Trust v. McCoy (In re McCoy),* 269 B.R. 193, 199 (Bankr. W.D. Tenn. 2001).

As explained by the court in *Haney v. Copeland (In re Copeland)*, 291 B.R. 740 (Bankr. E.D. Tenn. 2003):

> Proving the Debtor's intent to defraud is similar to proving the Debtor's knowledge and/or recklessness as to the falsity of the representations made. Because intent is a purely subjective question, the court must examine the totality of the Debtor's actions to determine if she possessed the requisite intent to deceive the Plaintiffs. Any benefit of the doubt must be resolved in favor of

7

the Debtor, as § 523(a)(2) is strictly construed in her favor. *XL/Datacomp, Inc. v. Wilson (in re Omegas Group, Inc.)*, 16 F.3d 1443, 1452 (6th Cir. 1994). *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003).

In the present case, while there is confusion regarding the amount and form (line of credit or term loan) of the unsecured debt, it is undisputed that the loan was unsecured with repayment to come from Defendant's regular income. Defendant's brief indicates that he requested the loan in order to take a vacation, he took the vacation, and he never used any of the money for other purposes. Defendant's testimony under oath at the creditor's exam indicates that he used the proceeds for gambling. Thus, there is a question of fact as to the intended use of the proceeds at the time the loan was requested. There is also a question of fact regarding whether (and to what extent) Plaintiff relied on Defendant's representations about the loan's purpose in deciding to make the loan. Because the source of repayment for the loan was unrelated to any of the alleged uses of the loan's proceeds, Plaintiff arguably did not rely on any of the misrepresentations in making the loan. Because intent and reliance are issues of fact, summary on the § 523(a)(6) issue is inappropriate.

Section 523(a)(6): Wilfull and Malicious Conduct

Section 523(a)(6) states:

(a) A discharge under section 727,1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

The Supreme Court has held that an injury is "willful" under § 523(a)(6) if the debtor

8

desired to cause the consequences of his act or if the injury was substantially certain to result. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 646 (6th Cir. 1999). Thus, § 523(a)(6) bars discharge of debts arising from intentional torts. *In re Trantham,* 304 B.R. 298, 307 (6th Cir. BAP 2004). Section 523(a)(6) also requires that the debtor acted "maliciously." Courts have defined malicious as "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Trantham*, 304 B.R. at 308.

In order to determine whether Defendant willfully injured Plaintiff by specific actions which resulted in the denial of the insurance claim on the car, the Court needs to determine exactly why AAA denied the claim. The AAA records submitted with the pleadings clearly indicate that AAA believed that fraud was involved, but the nature of the fraud is not clear. Certainly if the court finds at trial that Defendant committed fraud in attempting to collect on his insurance policy, the Court will rule in Plaintiff's favor. However, at this juncture, there are questions of fact as to whether Defendant's conduct with regard to AAA justifies a finding of willful and malicious conduct. Summary judgment on the § 523(a)(6) claim is not appropriate.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied.

**Signed on January 19, 2007**

                                               **/s/ Marci B. McIvor**
                                        **Marci B. McIvor**
                                        **United States Bankruptcy Judge**